UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>v. )<br>)<br>OUAJDI BEN-MRAD, a/k/a "Wazzie", )<br>and JOHN DOE, )<br>  Defendants, )<br>) | **CRIMINAL ACTION**<br>**NO. 04-1639-CBS** |

**MEMORANDUM OF PROBABLE CAUSE AND**
**ORDER ON THE GOVERNMENT'S MOTION FOR DETENTION**
February 25, 2004

**SWARTWOOD, M.J.**

I.  Nature of the Offense and the Government's Motion

On February 11, 2004, a Criminal Complaint was filed, charging Ouajdi Ben-Mrad, a/k/a "Wazzie" ("Mr. Ben-Mrad") and John Doe[1] (collectively "Defendants"), with knowingly and with intent to defraud, with one or more access devices issued to another person or persons, to receive payments or other things of value during a one-year period, the aggregate value of which is equal to or greater than $1,000, in violation of 18 U.S.C.

---

[1] After "John Doe" was arrested, he revealed his true name to be Sonam Dhondup.  Therefore, I will refer to "John Doe" as Mr. Dhondup.

§1029(a)(5) and aiding and abetting, in violation of 18 U.S.C. §2.

On February 13, 2004, Messrs. Ben-Mrad and Dhondup appeared for their initial appearance in connection with this Complaint and at that time, they were advised of their right to a preliminary examination in accordance with Fed. R. Crim. P. 5.1 and the Government moved for a detention hearing in accordance with 18 U.S.C. §3142(f)(2)(A)(risk of flight).

On February 23, 2004, a consolidated probable cause/detention hearing was held and at that hearing, Jon D. Murphy, Special Agent with the United States Secret Service ("Secret Service") testified on behalf of the Government and was cross-examined by Defendants' counsel.

Additionally, Irondina Reis, Mr. Ben-Mrad's wife, testified on behalf of her husband as a potential third-party custodian and Magnoury Lama, wife of Mr. Dhondup's childhood friend from Tibet, testified on behalf of Mr. Dhondup as a potential third-party custodian.

## II.  Findings of Fact

1.  In January 2004, Special Agent Murphy was contacted by a detective from the Bourne Police Department, Bourne, Massachusetts, concerning complaints by citizens that fraudulent

charges were being made to their credit/ATM card accounts. <u>Govt. Ex. 1</u>.

2. Upon further investigation, it was discovered that most of the victims of fraudulent charges to their credit/ATM cards had made credit or debit purchases at the Cape Cod Filling Station, located at 156 Main Street, Buzzard Bay, Massachusetts just prior to the fraudulent activity in their accounts. <u>Id.</u>

3. A total of sixty-two victims had a total in an excess of $105,000 fraudulently charged to their credit/ATM card accounts in New York, New Jersey and Maryland. Law enforcement officials concluded that the customers of the Cape Cod Filling Station, who found fraudulent charges made to their credit/ATM accounts, were the victims of "skimming" which involves the practice of capturing and storing a person's debit or credit card information off the magnetic stripe located on the back of the card and then illegally producing duplicate cards or altering other cards with the victim's information encoded on the back. These cards are then used to make fraudulent purchases which are charged to the victim's account. "Skimming" is usually accomplished by someone taking possession of the person's credit/ATM card and swiping that card through a "skimmer" which collects the information contained on the person's credit/ATM card. <u>Govt. Ex. 1</u>.

4.   The Cape Cod Filling Station is a full-service gas station and customers, wishing to charge their gas purchases, typically hand their credit/ATM card to an attendant, who would then properly charge the transaction to the customer's account.

5.   Law enforcement officials interviewed a number of customers of the Cape Cod Filling Station who were victims of credit/ATM card fraud and several of those victims identified Mr. Ben-Mrad, from a photo array, as the attendant who had taken their credit/ATM cards to charge their accounts for the purchase of gasoline.  Following Mr. Ben-Mrad's arrest and after being advised of his Miranda rights, he admitted to his involvement in the "skimming" scheme as an attendant at the Cape Cod Filling Station.  <u>Govt. Ex. 2</u>.

6.   On January 15, 2004, a customer at the Cape Cod Filling Station purchased $21 worth of gasoline and handed her debit/credit card to the attendant to charge her account for that purchase.  This customer described the attendant as a short, heavy set, male of Asian descent.  Subsequently, fraudulent purchases were made to this customer's debit/credit card at two stores in Maryland.  <u>Govt. Ex. 1</u>.

7.   On January 26, 2004, another customer at the Cape Cod Filling Station, handed her credit card to an attendant to charge her account for the purchase of gasoline.  This customer

4

described the attendant as being of Hawaiian or Asian descent. Subsequently, a fraudulent purchase to her account had been attempted at a store in Delaware.

8. Law enforcement officials took pictures of Mr. Dhondup working at the Cape Cod Filling Station. In one picture, Mr. Dhondup is shown in the process of receiving a credit card from the hand of a customer. The pictures of Mr. Dhondup are consistent with the description of the attendant who waited on the victim customers described in paragraphs 6 and 7. <u>Govt. Ex. 1, Attachments A, B and C</u>.

III. <u>Probable Cause</u>

A. <u>Mr. Ben-Mrad</u>

After Mr. Ben-Mrad was arrested and advised of his Miranda rights, he made a written statement admitting his involvement in "skimming" credit/ATM cards at the Cape Cod Filling Station. A number of victim customers identified Mr. Ben-Mrad from a photo array as the attendant who had taken their credit card to charge gas purchases just prior to fraudulent purchases being made on their credit/ATM card accounts.

Therefore, I find probable cause for the offense charged against Mr. Ben-Mrad in this Complaint.

B. <u>Mr. Dhondup</u>

Two customers clearly identified Mr. Dhondup as the attendant who had taken their credit/ATM card at the Cape Cod Filling Station to charge their account for gas purchases and shortly thereafter, fraudulent purchases were either made or attempted on these accounts.

Therefore, I find probable cause for the offense charged against Mr. Dhondup in this Complaint.

## IV. The Bail Reform Act

### A. Discussion of the Bail Reform Act

Under 18 U.S.C. § 3142 ("The Bail Reform Act" or "the Act"), the judicial officer shall order that, pending trial, the Defendant be (1) released on his own recognizance or upon execution of an unsecured bond; (2) released on a condition or combination of conditions; (3) temporarily detained to permit revocation of conditional release, deportation, or exclusion; or (4) detained. 18 U.S.C. § 3142(a). Under the Act, the judicial officer may detain a person pending trial only if, after a detention hearing held pursuant to 18 U.S.C. § 3142(f), the judicial officer determines that "no condition or combination of conditions [set forth under 18 U.S.C. § 3142 (b) or (c)] will reasonably assure the appearance of the person as required and the safety of any other person and the community". 18 U.S.C. § 3142(e). The Supreme Court, in United States v. Salerno, 481

U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) has cautioned that "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." Id. at 755, 107 S.Ct. at 2105. For this reason, the Defendant may be detained only if the judicial officer finds by (1) clear and convincing evidence, that the Defendant is a danger to the community, or (2) a preponderance of the evidence, that the Defendant poses a risk of flight. See 18 U.S.C. § 3142 (f); United States v. Jackson, 823 F.2d 4-5 (2d Cir. 1987); United States v. Berrios-Berrios, 791 F.2d 246, 250 (2d Cir. (1986), cert. denied, 479 U.S. 978, 107 S.Ct. 562, 93 L.Ed.2d 568 (1986). See also United States v. Patriarca, 948 F.2d 789, 792-93 (1st Cir. 1991). Furthermore, the judicial officer "may not impose financial condition that results in the pretrial detention of the person". 18 U.S.C. § 3142 (c).

The Bail Reform Act establishes a two step procedure for making the determination that the Defendant should be detained. First, the Government is entitled to move for detention where the Defendant has been charged with one of the offenses enumerated in the statute for which Congress has determined that detention is warranted. See 18 U.S.C. § 3142 (f)(1). The Government may also move for detention, or the judicial officer

may on his or her own motion move for detention, where the case involves a serious risk that the Defendant will flee or that the Defendant will obstruct or attempt to obstruct justice.  18 U.S.C. § 3142(f)(2). Second, the judicial officer must determine whether any condition or combination of conditions will adequately ensure the appearance of the Defendant and the safety of the community against any danger posed by the Defendant's pretrial release.  See  United States v. Friedman, 837 F.2d 48, 49 (2d Cir. 1988).

In meeting its burden on the issue of whether any condition or combination of conditions of release will reasonably assure the appearance of the person as required and the safety of the community, the Government is aided by the statutory presumptions created by 18 U.S.C. 3142(e).  Where the offense charged is one of the offenses enumerated in Section 3142(f)(1), Section 3142(e) creates the rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of the community if the judicial officer finds that: (1) the Defendant has been convicted of a federal offense that is described in Section 3142(f) or an offense under state law that would have been an offense described in Section 3142(f)(1) if federal jurisdiction had existed, (2) such offense was committed while the person was on release pending trial for a federal,

state or local offense, and (3) a period of not more than five years has elapsed since the date of conviction or release from imprisonment for such offense.  Section 3142(e) also creates the rebuttable presumption that no condition or combination of conditions will ensure the safety of the community and the appearance of the Defendant if the judicial officer finds that there is probable cause to believe that the Defendant committed an offense: (1) for which a maximum term of imprisonment of ten years or more is prescribed (a) in the Controlled Substances Act, (b) the Controlled Substances Import and Export Act, or (c) the Maritime Drug Enforcement Act; or (2) under 18 U.S.C. § 924(c).  In order to rebut either presumption, the Defendant must produce "some evidence" to the contrary.  <u>United States v. Jessup</u>, 752 F.2d 378, 384 (1st Cir. 1985).

In making the determination as to whether "any condition or combination of conditions will reasonably assure the appearance of the [Defendant] as required and the safety of any other person and of the community", the judicial officer is compelled to consider the following factors:

(1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug;

(2) the weight of the evidence against the person;

    (3)    the history and characteristics of the person, including:

        a.    the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

        b.    whether, at the time of the current offense or arrest, he was on probation, on parole, or other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State or local law; and

    (4)    the nature and seriousness of the danger to any other person or the community that would be posed by the person's release . . . .

18 U.S.C. § 3142(g).

    V.    <u>Discussion of Whether Detention is Warranted</u>

        A.    <u>Mr. Ben-Mrad's History and Characteristics</u>

Mr. Ben-Mrad was born in Tunisia on April 11, 1977. Mr. Ben-Mrad continued to reside in Tunisia, where he completed high school and three years of college, until coming to the United States in 2000. When Mr. Ben-Mrad first came to the United States, he resided in Brooklyn, New York for approximately nine to ten months, in Cocoa, Florida, for a short period of time, Rochester, New York, for approximately five months and for the past three years, he has resided with his wife and step-son at 108 Grinnell Street, New Bedford, Massachusetts.

Mr. Ben-Mrad's mother, father, brother and two sisters all reside in Tunisia. In July 2002, Mr. Ben-Mrad married Irondina Reis in New Bedford, Massachusetts. No children have been born to this marriage, but Ms. Reis has an eight year old son from a prior relationship, who resides with his mother and Mr. Ben-Mrad.

Mr. Ben-Mrad advises that he has had a work permit since February 2003 and is in the process of receiving a Green Card. Additionally, Mr. Ben-Mrad has married an American citizen.

Mr. Ben-Mrad has been employed at the Cape Cod Filling Station for the past three years.

Mr. Ben-Mrad has no criminal record.

Mr. Ben-Mrad's wife, Ms. Reis, is a naturalized United States citizen, who owns her own house and is the owner and operator of a gas station in New Bedford, Massachusetts. It is clear that Ms. Reis is a responsible, law abiding citizen.

    B.   Mr. Dhondup's History and Characteristics

Mr. Dhondup was born on November 10, 1978 in Tibet. Mr. Dhondup entered the United States on May 1, 2003 in New York. The Department of Justice has alleged that Mr. Dhondup entered the United States without a proper visa or other valid entry documents and he is presently scheduled for a removal and asylum hearing on June 25, 2004, at 10:30 a.m., in New York City. Mr.

Dhondup had previously appeared at a show-cause hearing on December 16, 2003. Defs. Ex. A.

Mr. Dhondup lived in Tibet until he was approximately age sixteen when he moved to Nepal where he remained for seven years. After Mr. Dhondup arrived in the United States in 2003, he first lived in Woodside, New York, for about four or five months with a friend and then moved to Webster, Massachusetts for approximately a week before moving to an apartment at the Cape Cod Filling Station about three months ago.

Mr. Dhondup is not married and his parents, as well as his brother and sister, all live in Tibet where they are farmers. Mr. Dhondup has no relatives living in the United States.

Prior to working at the Cape Cod Filling Station as a gas attendant, Mr. Dhondup worked as a day laborer in New York.

Magnoury Lama, who has agreed to be a third-party custodian for Mr. Dhondup, is a naturalized United States citizen and has been a Massachusetts resident for the past thirteen years. Ms. Lama is married to a Tibetan, who is a childhood friend of Mr. Dhondups. Ms. Lama and her husband have one child, age thirteen months. Ms. Lama and her husband live in a two bedroom apartment in Webster, Massachusetts and Ms. Lama, who is not employed and who takes care of her child during the day, has agreed to act as a third-party custodian for Mr. Dhondup. Ms.

Lama's husband is presently scheduled for a hearing in May 2004 to become a legal resident alien.

### C. Nature of the Offense; Weight of the Evidence; Government's Burden; and Risk of Flight

#### 1. Nature of the Offense

These Defendants are charged with an offense which provides for a maximum penalty of fifteen years of incarceration and almost certain deportation following completion of a sentence if they are found guilty of the offense charged in this Complaint. However, it can be argued that Mr. Dhondup may be granted asylum in the United States for reasons not advanced at the probable cause/detention hearing. However, such a conclusion, although a possibility, is mere speculation. If Mr. Ben-Mrad is found guilty, he would almost certainly face deportation regardless of the fact that he may be married to an American citizen.

Therefore, the offense charged against these Defendants is serious.

#### 2. Weight of the Evidence

Bearing in mind that these Defendants are presumed innocent, the Court must nevertheless consider the weight of the evidence against them. I have previously found probable cause for the offense charged against both Defendants in this Complaint. In fact, Mr. Ben-Mrad has admitted being involved in a "skimming" scheme at the Cape Cod Filling Station. The evidence against

Mr. Dhondup is more circumstantial. Two customers have identified Mr. Dhondup as the attendant who took their credit/ATM cards from them to charge their credit/ATM accounts for gasoline purchases. Both of these customers had their account information "skimmed" and with respect to one customer, merchandise was purchased and charged to that customer's account and with respect to another customer, an attempt was made to frauduently charge that customer's account. Therefore, although there is no direct evidence that Mr. Dhondup was part of this "skimming" scheme, there is sufficient circumstantial evidence for a finding of probable cause that he was so involved.

Therefore, the weight of the evidence against Mr. Ben-Mrad is substantial and the weight of the evidence against Mr. Dhondup is sufficient for a finding of probable cause.

### 3. <u>Government's Burden</u>

The United States has moved for a detention pursuant to 18 U.S.C. §3142(f)(2)(A). The Government must prove by a preponderance of the evidence that these Defendants pose a risk of flight and that there are no conditions or combination of conditions that would reasonably assure their appearance in Court if they were released.

### 4. <u>Whether Mr. Ben-Mrad Poses A Risk Of Flight</u>

Mr. Ben-Mrad has substantial ties to Tunisia where he spent the first twenty-two years of his life and where his mother, father, one brother and two sisters reside. However, Mr. Ben-Mrad has substantial ties to this District where his wife resides. If Mr. Ben-Mrad is found guilty of the offense charged in this Complaint, then it is almost certain that he will be deported following completion of his sentence. Therefore, Mr. Ben-Mrad has very little incentive to remain in the United States to face these charges and a very uncertain future. In reviewing Mr. Ben-Mrad's statement to Secret Service agents, it is clear that he has conspired with a rather sophisticated group of individuals in New York who paid him approximately $6,000 for his involvement in this "skimming" scheme. It would be in the interest of these individuals to assist Mr. Ben-Mrad in avoiding prosecution on these charges. Although Ms. Reis, Mr. Ben-Mrad's wife, has agreed to act as a third-party custodian and Mr. Ben-Mrad has agreed to electronic monitoring, I find that neither are sufficient conditions to assure Mr. Ben-Mrad's appearance in this Court as required. Therefore, I find by a preponderance of the evidence that Mr. Ben-Mrad poses a risk of flight and that there are no conditions or combination of conditions that will assure his appearance in this Court as required.

5. <u>Whether Mr. Dhondup Poses A Risk Of Flight</u>

Mr. Dhondup is an illegal alien, who has no relatives and no ties to this District or to this country. Mr. Dhondup would have no incentive to appear in this Court to face these charges, possible incarceration and almost certain deportation following incarceration if he is found guilty of the offense charged in this Complaint. I do not find that Mrs. Lama would be able to prevent Mr. Dhondup from fleeing prosecution in this case. Therefore, I find by a preponderance of the evidence that Mr. Dhondup poses a risk of flight and that there are no conditions or combination of conditions that will assure his appearance in this Court as directed.

VI. <u>Order of Detention Pending Trial</u>

In accordance with the foregoing memorandum,

IT IS ORDERED:

1. That Messrs. Ben-Mrad and Dhondup be committed to the custody of the Attorney General or his designated representative, for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal;

2. That Messrs. Ben-Mrad and Dhondup be afforded a reasonable opportunity for private consultation with counsel; and

3.  On order of a court of the United States or on request by an attorney for the Government, the person in charge of the corrections facility in which Messrs. Ben-Mrad and Dhondup are detained and confined shall deliver Messrs. Ben-Mrad and Dhondup to an authorized Deputy United States Marshal for the purpose of any appearance in connection with a court proceeding.

<u>RIGHT OF APPEAL</u>

THE PERSON OR PERSONS DETAINED BY THIS ORDER MAY FILE A MOTION FOR REVOCATION OR AMENDMENT OF THE ORDER PURSUANT TO 18 U.S.C. § 3145(b).

/s/ Charles B. Swartwood<br>
CHARLES B. SWARTWOOD, III<br>
MAGISTRATE JUDGE